```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Atropin Palmer,                :

      Plaintiff,              :     Civil Action 2:11-cv-503

  v.                            :     Judge George C. Smith

Sheriff Fred Abdalla,          :     Magistrate Judge Kemp

      Defendant.              :

REPORT AND RECOMMENDATION

This is a civil rights action in which Plaintiff, Atropin Palmer, a prisoner proceeding <u>pro se</u>, alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment during his incarceration at Jefferson County Jail from February 7, 2011 to February 10, 2011.  Mr. Palmer filed this action under 42 U.S.C. §1983 against Fred Abdalla in his official capacity as Sheriff of Jefferson County.

Both Mr. Palmer and Sheriff Abdalla have filed motions for summary judgment.  Mr. Palmer described one of his motions as one for "Money Damages and Compensatory Damages" (# 30), and another as "Motion of Plaintiff Atropin Palmer Demanded Trial, for Summary Judgment" (# 35), and the Court will consider the arguments in both of these motions together in deciding whether an award of summary judgment should be entered in Mr. Palmer's favor.  Mr. Palmer has also moved separately for a date for a jury trial (# 29).  Sheriff Abdalla has filed a Motion for Summary Judgment (# 33) and a response in opposition to Mr. Palmer's motion (# 36).  For the reasons below, this Court RECOMMENDS that Mr. Palmer's motions be DENIED and Sheriff Abdalla's motion be GRANTED.

I. <u>BACKGROUND</u>

The evidence presented by the parties in support of these motions consists of Mr. Palmer's deposition testimony and the

exhibits about which he testified.  Relevant portions of his deposition testimony are summarized below.

Mr. Palmer was transferred from the Ross Correctional Institution to the Jefferson County Jail sometime around daybreak on February 7, 2011.  When he arrived, he was issued one blanket.  He was taken to his cell, which he shared with one other inmate.  Mr. Palmer found a blue plastic mat or sheet that his cellmate told him was for him to sleep on.  His cellmate had two mattresses (although Mr. Palmer did not realize his cellmate had two mattresses until February 9) and two blankets.  Mr. Palmer testified that he had heard that the majority of the inmates in that unit had two or three blankets.  Mr. Palmer's cell had a window, which he said was airtight.  He acknowledged that a heating vent was present in the cell, but he said that it did not produce any heat in his cell throughout his stay at the Jefferson County Jail.  He also stated that his cellmate told him that "he had been in there for about two months, and [the heating vent] never worked.  That's why he had two blankets."

Mr. Palmer testified that on that first day it was very cold in his cell and he believed it was "in the teens."  When asked how he could determine the temperature, he said that when he and his cellmate were talking "frost was coming out of our mouths."  He testified that he did not have the opportunity to ask for a blanket on February 7 and that no one brought him one.

Mr. Palmer believed the temperature was also "in the teens" on the second day of his stay, February 8.  Mr. Palmer left his cell for meals on that day, but he did not complain to any prison employees about the temperature, nor did he ask for another blanket.  He testified that he did not ask for an additional blanket because his cellmate had told him that the prison officials would come around and check to see if he needed another blanket, but no one came to check.

In the early morning between midnight and 4:00 a.m. of February 9, the third day of his stay, Mr. Palmer got the attention of a prison employee passing by his cell and asked for a second blanket. The prison employee responded "One blanket per inmate," and then walked away. On that day, Mr. Palmer could see a gas station sign through his cell window indicating that it was 17 degrees outside. Some time around eight o'clock that night he discovered that his cellmate had confiscated his mattress and was hiding that fact by tucking one of his blankets around the two to give the appearance of one mattress. As a result of his realizing this and the resulting dispute, Mr. Palmer was placed in a segregation cell. After he was placed in segregation, he asked for a second blanket from "one of the worker guys . . . One of the inmates – like a trustee," and that individual brought him a second blanket. Mr. Palmer testified that the segregation cell was colder than his previous cell, but because he had a mattress and two blankets in that cell, he did not suffer any additional injury from that stay.

Mr. Palmer was transported back to Ross Correctional Center at approximately 4:00 a.m. the next morning, February 10.

At some point during his stay, Mr. Palmer went to court to appear before a judge. He did not tell anyone about the temperature in his cell nor did he request a blanket during that trip. During his approximately three-and-a-half days in the Jefferson County Jail, he asked for a second blanket twice: once in the early morning on his third day, when his request was denied, and once in the evening of his third day, when his request was granted.

When asked what injuries he suffered from his stay, he claimed "psychological trauma . . . cruel and unusual punishment, mental stress and anguish." The physical symptoms Mr. Palmer described were numb feet and hands during the time when he was

3

held at Jefferson County Jail, which went away after he was transported back to Ross, and suffering from a cold and chest pains upon his return to Ross, for which he took aspirin and sinus medication for about a week.  Mr. Palmer also described feeling chills in his current cell even though the temperature was not cold, but he has not sought treatment for this or mentioned it to any health or mental health professional.  In terms of his mental suffering, he testified that after being transferred to Ross, he saw a mental health professional who told him that his stay at Jefferson County Jail may have aggravated his mental condition.

## II. LEGAL STANDARD

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course,

4

since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

The fact that the parties have cross-moved for summary judgment does not establish that there are no triable factual issues.  "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."  Taft Broadcasting Co. v. United States, 929 F.3d 240, 248 (6th Cir. 1991).  Rather, as that decision notes, quoting John v. State of La. (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 705 (5th Cir. 1985), "'[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record.'"  Rather, the Court must evaluate each motion separately under Rule 56's standards.  Id. It is with these standards in mind that the instant motion must be decided.

This Court recognizes that Mr. Palmer is proceeding *pro se*. Although not excused from complying with the rules of civil procedure, "[a] *pro se* litigant's pleadings and evidence presented must be, and in this instance are, construed liberally."  Anderson v. Frye, 2007 WL 912290, *6 (S.D. Ohio Mar. 22, 2007).

### III. DISCUSSION

Mr. Palmer has brought this action against Sheriff Abdalla

in his official capacity pursuant to 42 U.S.C. §1983 alleging violation of his Eighth Amendment rights.

### A. MUNICIPAL POLICY

In order to prevail on his motion for summary judgment or defeat Sheriff Abdalla's motion for summary judgment, Mr. Palmer must provide evidence to support the elements of his claim against Sheriff Abdalla in his official capacity. A section 1983 official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). In this case, the entity is Jefferson County. In order to satisfy the requirements for suing a municipality under Monell, Mr. Palmer must "1) identify a municipal policy or custom; 2) connect that policy or custom to the municipality; and 3) show that execution of that policy or custom caused the particular injury." Janis v. Marcum, 77 Fed. App'x 308, 310 (6th Cir. 2003)(citing Garner v. Memphis Police Dep't., 8 F.3d 358, 364 (6th Cir. 1993) and Gregory v. Shelby County, Tenn., 220 F.3d 433, 442 (6th Cir. 2000)). Mr. Palmer has not done so.

Mr. Palmer testified that the temperature in his cell was very cold and he believed the temperature was below 20 degrees. He also testified that the Jefferson County Jail employees provided him with a blanket upon his arrival. He testified that his cellmate had two blankets and that he heard that other inmates had two or three blankets. Mr. Palmer requested a second blanket twice. Once, his request was denied, and once, it was granted. Taking these facts as true, these nonetheless fail to demonstrate the existence of a municipal policy or practice of maintaining cold temperatures in the cells or limiting inmates to one blanket.

To the extent that Mr. Palmer's suffering was caused in part by the fact that he did not have a mattress, there is no evidence

6

that such deprivation was a policy of Jefferson County Jail. On the contrary, Mr. Palmer testified that Jefferson County Jail officials had provided a mattress for him and that his cellmate deprived him of use of that mattress. Furthermore, when Mr. Palmer was placed in segregation, he was provided with a mattress.

### B. CONDITIONS OF CONFINEMENT

Even if Mr. Palmer had provided evidence to support the existence of a municipal policy or custom, he could not prevail on his motion for summary judgment or defeat Sheriff Abdalla's motion unless he could provide evidence that his conditions of confinement rose to the level of a constitutional violation. "An Eighth Amendment conditions-of-confinement claim has two elements. 'First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.' Second, the prison official's 'state of mind [must be] one of "deliberate indifference" to inmate health or safety.'" Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006)(citations omitted).

Regarding the first prong - the seriousness of the deprivation - routine discomforts do not rise to the level of an Eighth Amendment violation, but rather "extreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . -for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). Exposure to temperatures that are close to freezing and failure to provide

7

adequate clothing and blankets may rise to the level of a constitutional violation.  See, e.g., Franklin v. Franklin, No. 97-4365, 215 F.3d 1326 (table), at *4 (6th Cir. 2000); see also Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir.1992).  The "circumstances, nature, and duration of a deprivation . . . must be considered in determining whether a constitutional violation has occurred."  Spencer, 449 F.3d at 728 (internal quotation and citation omitted).

In weighing those factors, the Court of Appeals pointed out that the plaintiff in Franklin "was continuously exposed to 'close to freezing' temperatures inside his cell, but for 'only' twenty-two days," and the inmates in Knop "experienced more direct contact with the cold when they were forced to go outdoors without adequate clothing, but this exposure obviously was not continuous."  Spencer, 449 F.3d at 729.  The evidence presented by the plaintiff in Spencer left "some question as to just how cold it was," although his evidence was sufficient to conclude "that he lived in cold temperatures *continuously for several months* (including all of December and January), subject only to the occasional relief of an unseasonably warm day."  Spencer, 449 F.3d at 728 (emphasis in original).  The court determined that doubts as to the severity of the cold temperatures could be compensated by the duration of exposure.  Id. at 729.  Without more, "being exposed to cold temperatures simply [does] not rise to the level of a constitutional violation."  Wells v. Jefferson County Sheriff Dept., 159 F. Supp. 2d 1002, 1011 (S.D. Ohio 2001) aff'd, 35 Fed. App'x 142 (6th Cir. 2002).

Here, construing the facts most strongly in his favor, Mr. Palmer was exposed to cold temperatures for approximately three-and-a-half days.  Although Mr. Palmer has testified that it was uncomfortably cold in his cell and that he believed the temperatures were below freezing, the basis for his belief was

8

(1) how cold he felt, (2) the fact that he saw "frost" coming out of his mouth, and (3) on the third day he could see a sign outside indicating that the outdoor temperature was 17 degrees. None of those facts would allow a reasonable fact finder to determine the temperature with a sufficient level of accuracy. Mr. Palmer testified that the window to his cell was airtight, so it is difficult to know to what degree the outside temperature affected the temperature of the cell.  Further, Mr. Palmer's testimony about his physical symptoms (which included temporary numbness in his hands and feet and a subsequent cold) does not support a finding that his conditions of confinement were unconstitutional.  See, e.g., Richmond v. Settles, 450 Fed. App'x 448, 455 (6th Cir. 2011) ("In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment.").  Further, during the time Mr. Palmer was in the jail, he made a trip to court, and he was placed in an isolation cell with a blanket and a mattress.  Without evidence demonstrating the temperature was sufficiently low, and without exposure over a significant duration of time, the evidence here fails to demonstrate that a constitutional violation occurred.

    Furthermore, regarding the second prong, Mr. Palmer has failed to provide evidence that the prison officials' state of mind was one of "deliberate indifference" to his health or safety.  The only evidence he offers on that subject is the fact that one prison employee refused his request for a second blanket.  There was no extended discussion with that employee, nor did Mr. Palmer discuss the conditions with any other employees of the jail prior to his move to segregation at the end of the third day.  When he moved to segregation, he requested a second blanket and was provided with one.  This evidence taken together fails to demonstrate deliberate indifference.

9

## C. DE MINIMIS INJURY

Lastly, since Mr. Palmer is suing as a prisoner, under 42 U.S.C. §1997e(e) he may not bring a Federal claim for damages arising from "mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §1997e(e); See also Noble v. Collins, 2:08-CV-0881, 2009 WL 1107802 (S.D. Ohio Apr. 23, 2009). The Court of Appeals "has indicated in unpublished opinions that even though the physical injury required by §1997e(e) for a §1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." Jarriett v. Wilson, 162 Fed. App'x 394, 400 (6th Cir. 2005). One description of a *de minimis* injury is one that "would not require 'a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury.'" Id. at 401 (quoting Luong v. Hatt, 979 F. Supp. 481, 485 (N.D. Tex. 1997). To the extent that Mr. Palmer fails to demonstrate a physical injury for purposes of the PLRA, this fact would bar only compensatory damages, and not nominal or punitive damages. Carter v. Wilkinson, 2010 WL 2900399 (S.D. Ohio July 22, 2010) report and recommendation adopted, 2010 WL 5068730 (S.D. Ohio Dec. 6, 2010) (citing Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir.2003)).

Mr. Palmer admits that the numbness in his hands and feet immediately went away upon his transfer to Ross Correctional Center, that his cold lasted only one week, and that it responded to decongestants and aspirin. These injuries are *de minimis*, and Mr. Palmer's claim for compensatory damages is not permitted pursuant to section 1997e(e).

## IV. CONCLUSION

For the reasons stated above, this Court RECOMMENDS that Mr. Palmer's Motion for Money Damages and Compensatory Damages (# 30)

10

and his Motion for Summary Judgment (# 35) be DENIED, and that Mr. Abdalla's Motion for Summary Judgment (# 33) be GRANTED. This Court further RECOMMENDS that Mr. Palmer's Motion for Demanded Jury Trial (# 29) be DENIED as moot.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge